May it please the Court, Frank Bottini for Appellant Edelson. There's two main issues on our appeal. First is the fact that the Court dismissed the claims under improper legal standard, and obviously on both of these we're dealing with a de novo standard because it was a summary judgment order. The second issue is that the Court improperly weighed the evidence on summary judgment and there were disputed issues of material facts, so that that constitutes reversible error. In the briefs, you hear a lot about this divisibility issue, and I think it's important to start there. The main case that both the District Court and Appellees Revideron was the Rivard case from the Third Circuit. I think it's important to just walk through that for a second because we only have two claims here. We have unjust enrichment, and we had a UCL claim. Now it's important to note that the issue of divisibility only comes up under the unjust enrichment claim. It has nothing to do with the UCL claim, and let me explain why. Can I ask you a question about divisibility? I understand the concept of divisibility and I understand the discussion about when it will be divisible and when it won't be. It seems to me a huge factor in this is sort of when – there's also the talk about when risk attaches, right? And so how does – and it's a little bit easier for some reason for me to conceptualize when risk attaches as opposed to – divisibility seems like it's sort of ipsedix. It's like you either say it's divisible or it's not, and one of the things we look at is does the actual contract divide it out. But when risk attaches is an economic concept that I can wrap my mind around a little bit. Are those different – I guess my first question is are those different things, divisibility and when risk attaches, or do they kind of play together somehow? Absolutely, and that's why we say the court employed the wrong legal standard. Divisibility is only relevant to an unjust enrichment claim, and the reason is very straightforward. When you say absolutely, just to make sure I understand, you're saying that absolutely they're different things? Yes. Like completely different? Overlapping? Completely different. Let me explain why very simply. It just takes five seconds. When you have an unjust enrichment claim, you're saying the contract doesn't govern the dispute. The very first thing that the court has to do is decide whether your request of relief is within the subject matter of the complaint. If the answer is no, you're done. You don't have to even discuss divisibility. Then the unjust enrichment standards apply. On the other hand, if your claim for unjust enrichment is encompassed within the subject matter of the contract, then you're out of court. Now what happened in Rivard? In Rivard... Could we get back to the California statute? The California statute 481.5A doesn't say anything about divisibility, and it doesn't say anything about when risk attaches. What it says is the insurer shall tender the gross unearned premium, and then there's not really a good definition of gross unearned premium. So what does gross unearned premium mean, and where do we find that in California law? Well, there certainly is no Ninth Circuit decision, Your Honor, and... Well, it would be a California case we want, right? I'm sorry? We want a California case. That's right. Because this is California law. Right. So there is certainly no California appellate court decision on that specific issue. We think, in our case, it came down to expert testimony, and there was a dispute. So we're supposed to figure out what the California Supreme Court would say, and are there any clues about what the California Supreme Court would say about what gross unearned premium is? Well, not in the travel insurance context, Your Honor, but going back to the statute, the statute says when a line of personal insurance terminates for any reason, the insurer shall return that. So... The gross unearned premium... But this wasn't a termination for any reason. This was a... I thought this was... I thought this fell within the second prong, the reduction in coverage. It was both. So the policy itself... But it didn't terminate. It canceled. Because... And I... No, they paid... Well, okay. Help me understand that. Yeah. Because I viewed it... When I looked at that, it wasn't a termination. How could it be a termination? They got the full money back from the cruise cost. So that... I don't understand how that's a termination. Didn't they? Am I misunderstanding that? Yeah, they got it back from the cruise ship company. But the policy itself... We're talking about the premium... I see. They got it back from the cruise ship and not because the insurance company didn't pay it back. Right. Are you saying it was like a constructive termination? Did the insurance company say, we're terminating it? Or you're saying it as a... The policy itself specifically states that if the insured cancels the trip, the policy is automatically terminated. It says that in the policy. That's part of the record. If the insured cancels the trip? If they cancel their trip, it's covered by the travel insurance. If the ship... Either way. Okay. In this instance, the Viking cruise line canceled the trip. And then the insured has a duty to notify the travel insurance company. And then the policy says, then the policy is automatically terminated. You said if the insured, which in theory, I mean, they could see the insurance company saying, well, you didn't cancel the trip, Viking did, the insured didn't, the Viking did. And so that... I don't have in front of me the language, that particular language, but is it, does it say that if the insured cancels the trip? Because in theory, that'd be something different than the Viking or the airline or whatever canceling. Yeah. I have the exact cite to the record, your honor, that I'll find it and give it to you on my rebuttal. But I have the exact language. I think it says if the trip is canceled for any reason. So let's say that the trip is canceled, the policy terminates automatically by its terms. And then we need to find out what the gross unearned premium is. And I understand from the arguments of the policy that you believe, though I don't know there's any cases supporting this, that a premium is unearned if liability for the risk that was being insured doesn't arise. Is that right? That's one of the ways, certainly. And so here, I mean, it seems very ambiguous to me because you could certainly argue, as opposing counsel does, that liability for post-departure events couldn't arise if the cruise ship never departs. I mean, that's, that's the basic argument for their unearned premiums. Why is that wrong? Is there any California law or other law that would make that wrong? Well, that's our argument. Oh, sorry. We're the appellate. Got the wrong party. So I agree with you, Your Honor. I agree with you. And so our argument is, yeah, if the trip never occurs, the post-departure risk could never arise. They face no risk for that. It's pretty common sense. Can I ask you a question about that? Sure. Because that's the nub for me. Yeah. That does not seem right. Okay. That seems, in fact, I think that's clearly wrong. So let me ask you. So you're the insurance company, right? And COVID happens. And these darn, these darn cruise lines don't cancel their trips, right? And they don't, instead of doing what they did here, which is probably the prudent thing to do, they don't cancel. And so they take a trip, three quarters of the old people on this cruise line get COVID. People are dying left and right. It seems like in that circumstance, if that had happened, that they could have incurred significant liability for post-departure. They could have had, because the cruise line is, I don't know what this all covers, but it's stuck in Mexico or something. They got to get these people home, all this, all these. And so you're at the insurance company and COVID's hit and you're like, and you're praying that these cruise lines cancel, but you don't get to control that they cancel. And if they don't cancel, you can't increase your premium. You got a certain payment. And so you, you got a certain pay and you're stuck with that risk. You can't cancel it on your own. You're stuck with it. So it's just not, it cannot be true. Your whole argument stems, I, there's some challenges here as to what unearned means and there's a lack of precedent and stuff, but the economic argument that they have not, that they're, that the risk is not attached because the trip was never, that's not true. Like they didn't know as of the day before the cruise canceled, whether or not they would have significant risk from that cruise taken off, a bunch of people dying on that cruise, the cruise getting canceled in the middle, being stranded in the Gulf of Mexico or the Gulf of America, whatever you want to call it. Like, and now you're bringing out helicopters to get these people off, which may be covered by this insurance. It just can't, I mean, it cannot be true that they didn't have any risk until the cruise actually leaves the, until it actually leaves. The risk all assumes that the trip will commence. So yeah, it's. No, it assumes that all risk makes tons of assumptions. The fact that something is making, that's, that's, that's the wrong assumption in your argument is that the mere fact that you're making assumptions means you don't have risk. That's not true. Like you are, they have risk and they have to price that risk. They have to figure it out. And when COVID hits, suddenly that risk goes through the roof for them, but they don't get to increase their premium. So that's why it doesn't make any sense to me. I'm not, I don't know how to reconcile this with California law, but it makes no sense to me, the argument that they didn't have risk for post-departure risk before this cruise until the, until the moment the cruise leaves the docks, that's just, that's not true. Well, again, and I think, you know, with all due respect, Your Honor, so this is your opinion and this was perhaps the opinion of the district court, but we had two experts in the field who had divergent views and our expert had a contrary view and had very good reasons for his opinion. And the district court disregarded his opinions, credited solely. Because of the legal basis, basically. Well, they didn't file a Daubert motion and the district court did not exclude our expert under Daubert. No, but I mean, the district court relied on the law. Let me ask it in. But can I just say one other thing? Yeah, yeah. I'm sorry, Your Honor, but even if you say there were some parts that were legal arguments, there was a vast majority of his opinion that was based on facts. It was not excluded. No, that's not my point. Maybe I can make my point with this question. We have cases from other state laws, admittedly not California, which I think is, you know, Judge Ikuda's point that we don't have anything in California. Is there a reason to believe that California law would be interpreted differently than Florida law or Hawaii law or Missouri law or Michigan law or New Jersey law?  Okay, tell me that. And let me explain why. Because Revard was based on Michigan and New Jersey law. Yeah, I understand that. First of all, in Michigan and New Jersey, unjust enrichment is a separate cause of action, which it's not in California. Also there, they define subject matter of the requested relief more broadly than California does. So for those two reasons, but so that's the answer to that question, but I would like to get back to this divisibility issue. The district court's whole opinion for both causes of action was based entirely on this divisibility issue. Now going back to the point I wanted to make at the beginning, an unjust enrichment cause, you're saying the contract either covers the subject matter of the dispute or it does not. Again, if it does not, you go to your unjust enrichment claim and you go forward. If it does cover it, then you have to look at divisibility. The only reason you look at divisibility, and if you read the Revard case, the plaintiff had to go to divisibility because the court said your requested relief falls within the subject matter. And then the argument was, your only argument is you have to show some reason to set aside the contract. So the plaintiff's argument was there was a lack of consideration. To adjudicate the issue of a lack of consideration, you have to determine whether the contract's divisible. All right? Now in our case, it's totally irrelevant. The district court initially found that our requested relief was not within the subject matter of the dispute, and that was in the court's order on the motion to dismiss. The key thing, I think, for divisibility is at the summary judgment stage, the district court nowhere determined that our requested relief was within the subject matter. And the court had previously found it was not within the subject matter because the travel insurance plans don't address refunds under situations where the trips are canceled pre-departure. So there was no need to get into divisibility. It was a reversible error for the district court to get into divisibility because the district court had already decided that the subject matter of our dispute was not within the subject matter of the contract. And even if the court had gotten to that issue, it's only an issue for unjust enrichment, right? It has nothing to do with the UCL. And if we move to the UCL, that's really important because Rivard and none of the other cases involved a UCL claim. They didn't have California Insurance Code 481.5, Your Honor. It wasn't an issue there. They didn't analyze it. So how do you respond to Judge Van Dyke's question, which is there's no way that the premium is unearned for post-departure events because the insurer takes the risk at the  Well, again, the way I respond is we retained an expert in insurance law, Mr. DeWeese. For summary judgment purposes, you're saying there's a genuine issue of material facts?  Because that's a legal interpretation, right? It's a factual dispute. There's a factual dispute as to when the risk attaches. That's what your question is, Your Honor. And because there was a factual material issue dispute, there's a battle of the experts. Our expert went into a lot of details about not just when the risk attached, but how they build up the premiums. And he showed that they separately analyze the pre-departure and post-departure risks and they build them into the premiums separately. There's also different effective dates. Even if that's true, and I mean, even if that's true, I don't think that answers the question because they're still building in based on their understanding of what happens if a certain number of cruises aren't going to go out. And so that's still built into the factor of what risk is taken for the post. I mean, if you're right, then the premium is going to go up. Well, we have a, and I understand that, Your Honor, but we have a statute that the legislature passed, 41.5. And it says when a personal line of insurance terminates for any reason, the insurer shall refund the gross unearned premium. So it's ultimately a battle of the experts and, you know, it should have been reserved for the jury. We survived a motion to dismiss, the class was certified, our expert was not excluded, and the court decided the whole case on divisibility, which has nothing to do with the UCL claim. So even if you would affirm on unjust enrichment, we think it's got to be sent back on the UCL claim. And that wasn't addressed at all by the Rivard case. You're over time. All right. Thank you, Your Honor. But we'll give you a minute for rebuttal. Thank you, Your Honor. Appreciate it. Okay. Good morning, Your Honors. May it please the Court, Michael Wolgan for United States Fire Insurance Company and Travel Insured International. And I mean, just to respond, Judge Van Dyke, I mean, I think you hit the nail on the head. At the time that this plan is purchased, all these assumptions are made, and that's borne out by the undisputed facts. They're ex- It can't raise your premium. So let me ask him a question so he addresses this when he gets back up through you for a second.  So his argument is, no, divisibility is a completely separate thing than when risk attaches or whether, which I think is kind of whether something's earned, because it seems to me when risk attaches is when something's earned. So that gets us back to the language of the statute. But I mean, what I'm struggling with is, I'm still struggling with, because he says they're completely different things. It sounds like he feels like he needs them to be completely different things in order to. But if you've got a single premium and it's not broken out or anything, then the only way that they're divisible, it seems to me, is if part of it, you can conclude, well, that just hasn't been earned or risk hasn't attached. So it's not, I'm really struggling with the idea that the visibility and risk attaching are two different things, at least when you have a single unbroken out premium like that. And you're not going to, the way you're nodding, it looks like you're going to tell me why you're wrong. So you need, but tell me why he's wrong. Yeah. No. Why does that matter given the language of the statute? Okay. I'll start with that. Okay. So 481.5 requires the insurance company to provide this refund when there is gross unearned premium. That's really the court. And what tells us what that means? Okay. And that's insurance law. And that's general insurance law from treatise law from the undisputed standard in this case. If you look at plaintiff's complaint, for example, throughout the complaint, premium is unearned because the risk did not attach. The post-departure risk never came to fruition because the trip was canceled prior to departure. Therefore, the premium was unearned. It was a given. It never really did get fleshed out in a specific tracing through California law of what is unearned premium. But everyone seems to agree, even Mr. DeWeese in his report, agrees that the emergence of the risk, the attachment of the risk equals earned premium. And what tells us what risk attachment means? Okay. That is contractual liability. You're bound to the risk. U.S. Fire could not, like Judge Van Dyke opened with, could not get out of, could not raise the price, could not cancel this policy. And beyond that, the consideration, you know, there's really two parallel items here. You have the contract and then you have the consideration. The contract is indivisible because of its terms. You have a list of all these benefits. You never see an itemized breakdown of the premium. You have a free look period, 14 days for a full refund. If not, implicitly, there is no refund and there's some other refund provisions. Never a partial refund is offered anywhere. So that's sort of the contract. Then you have the consideration for the contract. The pricing has been fully vetted in this case. There really isn't any contrary evidence. You take each potential cost that could arise for a trip, a covered trip, whether it's before the trip, during the trip, medical, baggage issues, and you add it all together into one price and then you apply other factors to it, the expenses of the whole plan, all together at once. There is never, if you look at your car insurance policy, your property home insurance policy, I invite the court to do so, you'll see there's going to be a list of individual pricing per benefit. There's a lot of options a la carte. You can pick and choose. Here, none of that. It's all built into one cost, and that means the risk is attaching all at once together. You can't have one without the other, so much so that if you were to build this policy separately with individual components and price those out as options, you're looking at 30 to 40 percent more. That's in the record. That's the pricing in Mary Quill's declaration. If the court would like a cite, I can get that for you. But it's a different type of product that way. He's saying, though, that's a factual dispute, because if I understood him correctly, he's saying, no, their expert said that's how you built the policy, and so it couldn't be 30 to 40 percent because that's how you built it, so that's how you got that number. And here's why that's not correct. What their expert, Mr. DeWeese, does is he's an actuary. He's not a travel insurance actuary, but what he is doing, he's saying, well, look, if we go back to this rate filing and the rate manual, which is all in the record, undisputed, you can create a ratio by looking at the claim costs that went into that one price, and you can figure out, hey, wait a minute, the pre-departure component, the trip cancellation component, is 17 percent of the total for that stage of the pricing. That was his input. You're not going to hear any evidence that Mr. DeWeese raised where he attacked the underlying premise of it being one cost, one, you know, aggregated assessment of the risk. You will never hear any evidence from Mr. DeWeese that challenges that. It's just the arithmetic you could use to come up with this ratio. So, go ahead. If you take the logic that you can separate it out, 70 percent for the pre, then if you add the fact that this thing is 30 percent on the bottom, there's no risk attached, and I suppose you'd also have to say that you guys can get out of it somehow, that you can cancel it, you know, and so you really don't have any risk because you can cancel it, you can raise the premium. So, if you had a contract like that, then I think that that evidence that you can assign different numbers to, you know, from the $1,700 that the policy costs, that you can assign $700, the pre, then you could conclude that there was an unearned portion of it. Maybe you could, but I don't, I'm struggling how any reasonable jury could ever get there if, even if you say 800 of that is allocated to post-departure, if the risk is already attached and they're locked in to have to pay post-departure, then I don't see how it's unearned. That's what I'm struggling with. And that's 100 percent correct. In other words, I guess I'm getting, I think the breaking out seems a little irrelevant if it's, it's all whether it's earned or whether the risk is attached. So, is it your position that only if the insurance contract allows the insurer to cancel at various points, that would be the only time when you would ever have a gross unearned premium? Is that right? There has to be some sort of ability for the insurer to cancel? So, you know, I hate speaking universally. I can tell you in this, for this type of contract, that's true. Well, but, but, I mean, the, the California legislature always thought that gross insured premium has some meaning. Right. And your description, your definition would seem to deprive it of all meaning. So I'm a little concerned about that unless there's a California case or something on point. I'm not aware of a California case on point. What I would say is that conceivably a contract by its terms could tell you that we're considering premium to remain unearned or something along those lines. But you're saying they would have to have something in the contract saying this part of the premium is unearned unless something, have you ever seen an insurance contract that says that? Yes. Take a look at your car insurance policy. Because you have, I, I can't quote it to you, but the way those are typically structured is you could have something that is attaching over time. So you're paying, you're prepaying premium, in other words, to the insurance company with the knowledge that, hey, if I have to get rid of my car in advance, that's not going to have earned because it was a prepayment of premium for the year and perhaps you could have coverage sort of as you go. I have not seen that in my car insurance. And that wouldn't be the language you would see. I'm very doubtful about that. The insurance policy that I'm familiar with is you pay the amount up front and that's, and so there would never be a gross unearned premium. Well, my point is that you would have a provision that provides when you would get a refund of premium under certain conditions. If you were to, you know, turn in your car early under various conditions, the contract itself would tell you that there's going to be a refund of premium that they are considering unearned. So, so why do you need the statute if it's contractual? Obviously, the legislature thought it wouldn't purely be contractual. Right. I think particularly for a case like ours, because like I said, you can have a different kind of travel insurance product where you have a la carte. You pick your benefits and maybe some of them don't attach at the time of purchase. If you were to say post-departure separate from pre-departure. So you're going to pay it separately or what? You could have a prepayment of premium. I mean, you could do whatever you want in a contract, but I haven't seen a contract that does this. You know, one of my questions when I was going through the briefing was, there's no California law on point. There isn't even a hint of how the California Supreme Court would come out. Is this something we should certify to the California Supreme Court? I think it boils down to basic insurance treatise law. I think you're going to find the definition of unearned premium as sort of generic. We haven't found that. Yeah. I mean, they don't, they go and quote Haas, which I don't think we're bound by a federal district court. So no, the insurance treatises that I looked at didn't have anything that was helpful. Well, what I would say, Your Honors, is that in this case, the burden rested on the plaintiff to make that type of showing. Well, he did. He had an expert come in with a declaration. And I think the definition that the expert is utilizing supports our ultimate conclusion, which is the risk already emerged. See, the underlying premise, they're coming to this case with an assumption that, hey, there is no attachment of the risk, no liability until the person goes on their trip. Okay? But what we're showing through our premium and the single consideration is that, no, that risk attached up front. And under that fact, even under Mr. DeWeese's standard of the risk attaching is earned premium, he would still find our way if you actually saw the fact that the risk attached up front. But because he's saying the risk doesn't attach until departure... Well, we don't know what the risk attached means in California law because there's no case that explains what that is. That's not what that language is used in the statute. So I don't say, oh, that helps. It depends on how you define risk attaching. Right. So I think it's... I mean, there's certainly not... If the trip is canceled, they're certainly not liable for post-departure events. If the trip is canceled, they're not liable for post-departure events. That's true. But, for example, in the contract itself, there's a trip cancellation benefit. Right? And it says this is what you get when a trip cancels under these conditions. And partial refund is not there. So as a matter of contract, there's just no basis to claim that you should get a partial refund every time a trip cancels.  But California statutes normally would... can't be contracted around if they are setting what the rules are. Right. And I would say it fits within the statute, which is that... Oh, so we're just being superior. Can I... Let me ask the same question I ask opposing counsel. We've got Florida, Georgia, Missouri, Michigan, New Jersey law that all come out, I think, consistent with how you would interpret a similar statute. Is there anything... I mean, why would those not apply here? The counsel's argued, well, there's a reason to believe that the law is different in those states. Maybe it is. What's your response to that? Yeah. There is nothing to suggest that the law should be any different. It's... First of all, to the extent we're arguing about earned premium and unearned premium, there's nothing to suggest that somehow California is doing something different. Earned premium is, like I was saying, I think it's an insurance principle. It's regrettable that we haven't provided the court with that treatise. But my position is that that's universal, what earned premium and unearned premium is. It's in the insurance industry. And I think our experts... Were they interpreting earned premium in those other cases? Is that what they were hinging on? It is a byproduct, but very consistent with those rulings. So, for example, the idea of unjust enrichment in those cases is because of the fact that the claim was the risk had not attached. Therefore, the insurance company was unjustly enriched. And that's the same premise of earned and unearned premium, bearing in mind the court's questions on that issue. And I think it's just generic. That's just the standard of when a refund should be given under an insurance policy because it's a consideration for the coverage. So on certification, part of me thinks, well, certification could be healthier because I assume that these are not the only trips that were canceled for COVID and might have involved trip insurance. On the other hand, I assume that maybe trip insurances can be structured differently, right? Like there could be a trip insurance that's broken out. There could be a trip insurance that says different things about how you get refunds and stuff. So if they're different, then it's not clear to me how... I'm trying to see how we would even send this question to the California Supreme Court in a way that would actually be helpful but would be narrow enough to... I mean, would this be the trip insurance certification question? I'm just trying to figure out how we would certify this. Yeah, frankly, I can't conceive of how a question like this could be certified because... Well, we just ask them to define the language. You know, you were talking about, in response to Judge Nelson, is there any indication that California would come out a different way in the history of California insurance law before the California Supreme Court? What percentage of the time have they found for the insurer and what percentage of the time have they found for the insured? Right. I mean, I can't tell you that percentage. But you get my point. Her point is California is a different beast. Yeah, I think we're normally fine for the insured. That's my understanding of California insurance law. Fair enough. But I don't think we've seen any indication that somehow in all these years California has done something different in any respect to the earning of premium. And it's just intuitive that it's a feature. There is a clear definition of what premium is under California law, and that's consideration for the assumption of risk. And so I think that's, if that isn't in our briefs, I know our experts have talked about that. I guess what I was asking is, unearned premium seems to be fairly factually dependent, right? Like it could be different. It certainly would seem to be different outside the travel insurance, but it could even be different. So I'm trying to figure out what the California Supreme Court would answer in a question that we certified, at what level we would be getting an answer. It's hard for me to imagine they would be able to answer sort of very broadly what unearned premium is and isn't without having a factual matrix within which to make it. Because whether risks attach or not is a very factual question. Right. Agreed. So if they came back to us and said, well, something's unearned when risk doesn't attach, you're welcome. I'm not sure we'd have to decide whether risk is attached here. It seems like you're saying it has to be contractual, but unless it's spelled out in the insurance contract, then it's not an unearned premium. Isn't that your position? I'm not saying it has to be contractual. What I'm saying is that the meaning of unearned premium is dependent upon the consideration, the bargain. What was the bargain? Which would be in the contract, right? But it's sort of implicit in the insurance itself. It doesn't have to be a term of the contract. It's that we agree, the insurance company agrees, to provide insurance and to cover the risk in exchange for the certain amount. And if that risk never came to fruition, if the liability never attached, then there would be something that was unearned, and that should be refunded. It's a failure of the consideration. So it doesn't have to be the term per se, but it's was the bargain met for what was contracted for. We took you way over your time, unless there are further questions. Thank you, judges. I'll give you a minute for rebuttal. Thank you, Your Honors. It's funny because I actually had the same thought yesterday as I was sort of thinking about these things, that it would be this is a case to certify it to the California Supreme Court. Here's a question I would certify. Is there a reduction in coverage under Insurance Code 481.5 when a travel insurance plan that contains both pre- and post-departure coverages is canceled before the trip commences? That's the question. It's very straightforward. It ties directly into the language of the statute, which is reduction in coverage. And they can answer that. Is that a question that's significant enough that covers many multiple policies that the California Supreme Court would think it was worth its time? I wouldn't be so presumptuous to answer that. Certainly, there were a lot of these cases that arose because of COVID. So I do think it would be an issue that would be important enough. But I guess either they'd say yes or no. I think it would be worthwhile. Again, I think as Your Honors mentioned in the previous case, it's not normally the role of this court to decide California state law in the first instance. And there really does seem to be a dearth of authority here on that issue. A couple other quick points on divisibility, Your Honor. I think you wanted me to address that. It is a different issue than when the risk attaches. Think about your normal policy, health insurance, auto insurance. You cancel your policy, you get a refund. What's the divisibility there? It's temporal. For the month you just paid for, if you used any part of it, you didn't get a refund for any portion you haven't used. Here, there can be divisibility if you think that's relevant, even without the issue of the risk attaching. You have divisibility. It can be either temporal, you know, you divide up how much time you use versus how much time is left on the policy. Or, as our expert did it, you divide it between the portion of the premium that's attributable for pre-departure risks and post-departure risks. He did that. What was his answer? 17.4% of the premium is attributable for post-departure risks. So under his analysis, they get to keep the vast majority of their premium. No, but that's an incorrect statement of economics. I mean, that may be true that it's allocatable to that, but that doesn't mean that it wasn't earned at the time because there was still a risk that that was going to happen. But anyway, I don't. Okay. My point, Your Honor, was just there's different ways to look at divisibility. You don't have to define it solely in terms of when the risk attaches. You can look at other factors like our expert did. You're over time, so wrap it up, please. All right. One other thing. We also had Section 43, and that's part of our underlying or UCL claim. 483 says when the insurer incurs no liability under the policy, they must return a portion of the premium. They incurred no liability here. They paid zero claims for post-departure coverages. My colleague conceded that. I was wondering what your reliance on that, because it says by any default of the insured. What was the default of the insured in this case? The statute says any default of the insured other than actual fraud. So default could be canceling the policy here. Oh, and I wanted to give you the site. The default is canceling the policy because Viking Cruise Line says there's going to be no cruise. And the site I promised to give earlier is five excerpts of Record 721. And at the record at page 721, it's a copy of the travel insurance policy, and it says it terminates automatically whenever the insured cancels the trip. So once the trip is canceled, there's no potential liability for post-departure coverages. I think we have your argument. Thank you very much, Your Honors. I appreciate it. The case of Lewis Edelson v. Traveled Insured International is submitted, and the case of Christina Groff v. Keurig Green Mountain Inc. is submitted, and the court for this session stands adjourned. All rise. This court for this session stands adjourned.
judges: IKUTA, NELSON, VANDYKE